# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>UNITED TAX GROUP, LLC,<br><br>Debtor. | Chapter 7<br><br>Case No. 14-10486 (LSS) |
| ALLERAND CAPITAL, LLC,<br><br>Plaintiff,<br><br>v.<br><br>GEORGE L. MILLER, as Chapter 7 Trustee of United Tax Group, LLC,<br><br>Defendant. | Adv. Pro. No. 23-50373 (LSS) |

## OPINION

This adversary proceeding is a fitting end to a long and acrimonious bankruptcy case. Allerand Capital, LLC ("Plaintiff" or "Allerand") seeks a declaratory judgment that $52,000.00 escheated to the State of Florida by Google Inc. ("Escheated Funds"), which the Florida Department of Financial Services, Division of Unclaimed Property subsequently paid to Debtor's estate, are not property of Debtor's estate. Plaintiff also brings a Florida state law conversion action for the portion of the Escheated Funds spent by Mr. Miller ("Trustee"). For the reasons set forth below, judgment is granted in favor of Trustee.

**Procedural Posture**

United Tax Group, LLC ("Debtor" or "United Tax") filed a voluntary Chapter 7 bankruptcy petition on March 5, 2014. Mr. Miller was appointed as the chapter 7 trustee.

On April 28, 2023, Allerand filed its Complaint against Trustee.[1] Trustee filed his Answer to Plaintiff's Complaint on June 7, 2023.[2] Consistent with the Stipulated Scheduling Order, the parties filed a Stipulated Pretrial Order approved by all counsel.[3] The Stipulated Pretrial Order included a "Statement of Facts Admitted without Proof."[4]

Trial was held on December 13, 2023. The Court heard testimony from Richard Sabella and Trustee and admitted nine exhibits into evidence.[5] I then took the matter under advisement.

**Jurisdiction**

Jurisdiction exists over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b). Plaintiff asserts this is a core matter and, in any event, consents to the entry of final orders

---

[1] Adv. Pro. Compl. for Declaratory J. Determining Prop. Not Part of the Estate and Related Claims, ECF No. 1.

[2] ECF No. 5.

[3] Stipulated Pretrial Order, ECF No. 19. The Court did not sign the document titled Stipulated Pretrial Order but will continue to refer to it as such for clarity and consistency.

[4] Stipulated Pretrial Order § IV.

[5] JX-1, JX-2, JX-7, JX-8, JX-9, JX-10, JX-11, JX-14 and JX-15. Additionally, at trial, Plaintiff offered Exhibit JX-19 into evidence. Trustee objects based on relevance. JX-19 is the Undertaking of Allerand, LLC signed in connection with entering into a loan transaction with SWZ Financial II, LLC as lender. Plaintiff argues JX-19 is relevant to show that Allerand's payment of the AdWords Credit Card (as defined below) balance was not due to any unsatisfied pre-petition obligation of Allerand to Debtor. Trustee counters that why Allerand made the payments is irrelevant. I took the matter under advisement. I will sustain Trustee's relevance objection. The motivation behind paying the AdWords Credit Card is irrelevant.

by this court.[6] Trustee did not answer the allegation of whether the complaint asserts core or non-core causes of action and does not state whether Trustee consents or not to this court entering a final judgment in this matter. Accordingly, Trustee has waived the right to contest the authority of this court to enter a final order in this adversary proceeding.[7]

**Findings of Fact[8]**

United Tax was in the tax resolution business. Allerand LLC was the managing partner of United Tax and Plaintiff is an affiliate of Allerand LLC.[9] At all relevant times, United Tax and Allerand were headquartered and did business in Florida. Starting in 2009, United Tax used Google AdWords to market its services to potential customers. Debtor maintained one Google AdWords Account associated with Billing ID 4349-3006-5632 and Google AdWords ID 217-799-7470. During August 2013, automatic payments in multiples of $500 (i.e., $500, $1000, or $1500) were automatically charged to Debtor's American Express on an almost daily basis.[10] The United Tax American Express card was in the name of Ward Welke.[11]

---

[6] Compl. ¶¶ 3-4.

[7] Del. Bankr. L.R. 7012-1.

[8] This constitutes my findings of fact as required by Federal Rule of Civil Procedure 52, made applicable by Federal Rule of Bankruptcy Procedure 7052. Facts are drawn from those stipulated in Section IV of the Stipulated Pretrial Order unless otherwise stated.

[9] Trial Tr. 36:14-20.

[10] JX-1.

[11] JX-9. I am familiar with Debtor's American Express accounts. *See generally Miller v. Welke (In re: United Tax Group, LLC)*, Adv. Pro. No. 16-50088, ECF No. 82, 2021 WL 6138214 (Bankr. D. Del. Sept. 2, 2021).

3

On or about August 26, 2013, Debtor obtained a Google AdWords credit card issued by Comenity Capital Bank with account number 5304-8900-0039-2361 ("AdWords Credit Card"). With this new arrangement, Debtor continued to make automatic payments in $500 increments practically daily.[12] Mr. Sabella, the managing member of Allerand and Allerand, LLC signed the credit card application, provided financials and was an obligor on the AdWords Credit Card.[13] He also personally guaranteed the AdWords Credit Card.[14] Further, Mr. Sabella's name appears on the AdWords Credit Card account statement[15] and no other United Tax employee was an obligor on the account.[16]

Debtor did not conduct any business with Google except transactions related to AdWords.[17] Debtor shuttered its business no later than November 2013. As of December 1, 2013, the AdWords Credit Card had an outstanding balance of $108,893.66.[18]

On May 21, 2014, Mr. Sabella received notice from Comenity Capital Bank that it had closed, charged-off and sold the AdWords Credit Card account to Google with a balance of $77,426.85.[19] On or about June 20, 2014, Google placed the AdWorks Credit Card balance with The Commercial Collection Corporation of New York Inc. for

---

[12] JX-1, JX-2. Given this arrangement, it is unclear how Debtor ran up an outstanding balance and no party testified regarding this aspect of the arrangement.

[13] Trial Tr. 36:9, 36:16-17, 39:3-8.

[14] Trial Tr. 39:3-8.

[15] JX-2.

[16] Trial Tr. 45:21-24.

[17] Trial Tr. 45:2-6.

[18] *See also* JX-2.

[19] JX-14.

collection.[20] Mr. Sabella and the collection agency agreed to a payment plan under which Mr. Sabella caused Plaintiff to make the following payments (collectively, "Allerand Payments") to Google:[21]

| Check Number | Clearance Date | Amount |
|---|---|---|
| 72814 | 07/29/2014 | $7,000.00 |
| 82814 | 08/29/2014 | $7,000.00 |
| 92814 | 09/30/2014 | $7,000.00 |
| 102814 | 10/30/2014 | $7,000.00 |
| 112814 | 12/02/2014 | $7,000.00 |
| 122814 | 12/30/2014 | $7,000.00 |
| 12816 | 01/29/2015 | $7,000.00 |
| 22815 | 03/03/2015 | $7,000.00 |
| 32815 | 03/31/2015 | $7,000.00 |
| 42815 | 04/29/2015 | $7,000.00 |
| 52615 | 05/29/2015 | $7,426.85 |
| | **Total** | **$77,426.85** |

Sometime in early 2020, Google escheated $52,000.00 to the Florida Department of Financial Services, Division of Unclaimed Property ("Division"), account number 132586346.[22] The Escheated Funds were for "Reporting Year" 2019.[23] The Division classified these funds as "Credit Balances on Accounts" and recorded the "Reported Owner" as "United Tax Group, 675 West Indiantown Road Jupiter Florida, c/o Ward Welke."[24] The last reported contact with Debtor is recorded as 9/12/2014.[25]

---

[20] JX-11.

[21] *See also* JX-10 (cancelled Allerand Capital checks); JX-11 (Commercial Collection Corp. of New York claim activity records).

[22] JX-15.

[23] *Id.*

[24] *Id.*

[25] *Id.*

5

Trustee became aware of the Escheated Funds through a third party, Global Discoveries, Ltd.[26] With the assistance of Global Discoveries, Ltd., on or about June 15, 2020, Trustee made a claim for the Escheated Funds, which the Division paid to Trustee on or about September 8, 2020. Trustee subsequently spent $8,197.56 of the Escheated Funds.

**The Parties' Positions**

The source of the Escheated Funds is the core factual dispute. Plaintiff asserts that because it made the last payments to Google, the Allerand Payments were necessarily the source of the Escheated Funds. Allerand advances a "commonsense" argument: There is only one relationship between United Tax and Google, the Escheated Funds were escheated to Florida by Google, Allerand made the most recent payments on the Google account, therefore the Escheated Funds must have resulted from an overpayment by Allerand.[27]

Trustee contends that the Escheated Funds are unrelated to the Allerand Payments and arise from pre-petition payments made to Google by or on behalf of United Tax. Trustee points to the Division's Property Detail report which lists an account number of 132586346 and argues that this is a Google account number, not a number generated by the Division.[28] The account's genesis, according to Trustee, is a deposit account established when Debtor started placing adds with Google Adworks.[29]

---

[26] Trial Tr. 19:14-21; JX-15.

[27] Allerand has not cited any law in support of its proposition that the last money paid to an account is necessarily the source of any overpayment. When questioned by the Court, Allerand acknowledged that it was making a commonsense argument. Trial Tr. 8:1-17.

[28] Trial Tr. 20:6-21:1.

[29] Trial Tr. 25:15-26:1. Mr. Sabella, on the other hand, testified that "[t]here was one Google relationship and one account" and "[t]here were not several accounts. There was no deposit ever made. I've studied the records of the company, I was there for all of this. Nobody would have

## Discussion

### I.  Plaintiff has failed to prove that the Escheated Funds are not property of the estate.

By Count I, Plaintiff seeks an order declaring that the Escheated Funds are not property of the estate. As the Plaintiff, Allerand bears the burden to show that the Escheated Funds are not property of the estate.[30] This allocation of the burden also makes sense because the Escheated Funds were placed with the Division in the name of United Tax, not Allerand.[31]

Plaintiff largely relies on section 541(a)(7).[32] The argument appears to be: (i) the Escheated Funds arose from the post-petition Allerand Payments, (ii) Debtor did not possess these funds prepetition and section 541(a)(7) is not an independent basis by which the estate can gain property it did not previously possess and (iii) property acquired by the estate post-petition must have some relation to property the estate had rights to at the commencement of the case.[33]

---

funded $52,000 as a deposit without my approval and it didn't happen." Trial Tr. 72:22-23; 87:22-88:2.

[30] *See e.g., Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56-57 (2005) ("We therefore begin with the ordinary default rule that plaintiffs bear the risk of failing to prove their claims. Thus, we have usually assumed without comment that plaintiffs bear the burden of persuasion regarding the essential aspects of their claims.") (internal citations omitted).

[31] *See Official Committee of Unsecured Creditors v. Catholic Diocese of Wilmington, Inc. (In re Catholic Diocese of Wilmington, Inc.)*, 432 B.R. 135, 147 n.19 (Bankr. D. Del. 2010) (concluding party asserting that funds in pooled investment program account in debtor's name are not property of the estate bears the burden of proof).

[32] 11 U.S.C. § 541(a)(7) provides that property of the estate includes "[a]ny interest in property that the estate acquires after the commencement of the case."

[33] Stipulated Pretrial Order 5 (citing *French v. Marion Gen. Hsop. (In re Patterson)*, Case Nos. 08-3025, 07-31735, 2008 WL 2276961, at *6 (Bankr. N.D. Ohio June 3, 2008); *TMT Procurement Corp. v. Vantage Drilling Co. (In re TMT Procurement Corp.)*, 764 F.3d 512, 525 (5th Cir. 2014)).

7

Plaintiff misses the mark. The Code defines property of the estate in a sweeping manner: It is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case" "wherever located and by whomever held."[34] It specifically includes property in which the debtor did not have a possessory interest when the petition was filed.[35] To the extent, however, a debtor only has bare legal title to an asset, only legal title comes into the estate and not the equitable interest in the asset.[36] Accordingly, if the Escheated Funds are based on the Allerand Payments, then they are not property of the estate as Debtor had, at most, bare legal title by virtue of the fact that it was the Reported Owner of the Escheated Funds. But, if the Escheated Funds are based on payments made by Debtor prepetition, then the right to receive the Escheated Funds, and the funds themselves, are property of the estate. The most probative evidence on this issue is the one-page Division Property Detail report.[37]

Under Florida law "unclaimed property is primarily an intangible property liability that has been inactive on the books of a holder for a period of time as provided by state law (dormancy period) for which there has been no owner-generated activity."[38] Under the

---

[34] 11 U.S.C. § 541(a)(1).

[35] *Stanziale v. Brown–Minneapolis Tank ULC, LLC (In re BMT–NW Acquisition, LLC)*, 582 B.R. 846, 865 (Bankr. D. Del. 2018) (citing *United States v. Whiting Pools*, 462 US 198 (1983) ("[The] estate shall include all legal or equitable interests of the debtor and property as of the commencement of the case, is intended to include any property made available to the estate by other persons of the Act such as § 542(a). In effect, § 542(a) grants to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of the reorganization proceedings.")).

[36] 11 U.S.C. § 541(d). *See also Golden v. The Guardian (In re Lenox Healthcare, Inc.)*, 343 B.R. 96, 100 (Bankr. D. Del. 2006); *In re Moore*, 267 B.R. 111, 118 (Bankr. E.D. Pa. 2001).

[37] JX-15. Significant time was spent examining the various account numbers associated with credit cards, bank statements and the Property Detail. Ultimately, none of this was helpful.

[38] FLA DEP'T. OF FIN. SERVS. DIV. OF UNCLAIMED PROP., REPORTING INSTRUCTIONS MANUAL § 1.1, Rule 69G-20.041, Fla. Admin. Code. (July 2019).

8

"Primary Rule," the holder of unclaimed property must report it to "the state of the owner's last known address."[39]

> Based on these rules, once you have identified the liabilities that will be subject to Florida's unclaimed property law, you must follow the requirements set forth by Florida. The Florida Property Code and Dormancy Table, provided in this manual, is a helpful tool in identifying liabilities and the required dormancy period. Once the liability reaches the required dormancy period, it becomes unclaimed property and subject to being reported and remitted to Florida.[40]

With an exception not relevant here, "Credit Balances on Accts Receivable" have a five-year dormancy period.[41] Accordingly, the last owner-generated activity related to funds escheated in reporting year 2019 must have occurred on or before December 31, 2014.

Based on the evidence presented, I cannot find that the Escheated Funds are based on the Allerand Payments. While the first six Allerand Payments were made in 2014, the last five payments were made in 2015. To the extent that the payments made in 2015 were overpayments, the dormancy period had not yet concluded during 2019. Similarly, Google's last reported contact with the Owner of the Escheated Funds predates the conclusion of the collection activity. Moreover, the Property Detail lists United Tax c/o Ward Welke as the Reported Owner of the funds.[42] Mr. Welke's name is associated with the American Express accounts, not the Comenity Bank account. There is no evidence that the AdWords Credit Card was associated with Mr. Welke; indeed Mr. Sabella testified that

---

[39] *Id.*

[40] *Id.* Neither the Secondary Rule nor the Transaction Rule is applicable.

[41] *Id.* at § 1.3.4.1 (Florida Property Type Code and Dormancy Table) (citing Fla. Stat. § 717.102). Customer Overpayments also have a five-year dormancy period. *Id.* (citing Fla. Stat. § 717.102).

[42] JX-15.

he signed the application and was the only obligor on the account. It is more likely, therefore, that the Escheated Funds originated from payments on the American Express Account (or a source other than the payments on the AdWords Credit Card). Had the Escheated Funds originated from payments on the AdWords Credit Card, the Reported Owner on the Property Detail would have likely been United Tax c/o Mr. Sabella.

For the above reasons, Plaintiff has failed to prove that the Escheated Funds are not property of the estate.

## II. Plaintiff has not established an immediate right to possess the Escheated Funds.

To prevail on a claim for conversion of money under Florida law, a plaintiff must prove by a preponderance of the evidence[43] that:

> (1) specific and identifiable money is involved in the alleged offense; (2) the plaintiff enjoys an immediate right to possess that money; (3) an unauthorized act has occurred that has deprived the plaintiff of that money; and (4) the plaintiff has made a demand for return of the money, and the defendant has refused to comply.[44]

Having failed to establish that the Escheated Funds are not property of Debtor's estate, Plaintiff cannot prove that it has an immediate right to possess the $8,197.56 of the Escheated Funds spent by Trustee. Therefore, Plaintiff is incapable of proving conversion under Florida law.

---

[43] *United States v. Bailey*, 288 F. Supp. 2d 1261, 1264 (M.D. Fla. 2003).

[44] *Lahtinen v. Liberty Int'l Fin. Servs., Inc.*, Case No. 13-61766-CIV, 2014 WL 351999, at *5 (S.D. Fla. Jan. 31, 2014) (citing *Bailey*, 288 F. Supp. 2d at 1264-65). There is a split in authority among Florida courts as to whether intent is a necessary element of conversion. *Id.* However, I do not reach that question based on the facts before me.

**Conclusion**

For the foregoing reasons, I find in favor of Defendant on Counts I and II of Allerand's Adversary Proceeding Complaint for Declaratory Judgment Determining Property Not Part of the Estate and Related Claims. A separate judgment will enter.

*[signature]*

Laurie Selber Silverstein
United States Bankruptcy Judge

Date: November 20, 2024